1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOSHUA T. BERRY, | ) | Case No. EDCV 09-1363 JC |
| Plaintiff, | ) | |
| | ) | MEMORANDUM OPINION AND |
| v. | ) | ORDER OF REMAND |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
| Defendant. | ) | |

## I.   SUMMARY

On July 27, 2009,  plaintiff Joshua Berry ("plaintiff") filed a Complaint
seeking review of the Commissioner of Social Security's denial of plaintiff's
application for benefits.  The parties have consented to proceed before a United
States Magistrate Judge.

This matter is before the Court on the parties' cross motions for summary
judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The
Court has taken both motions under submission without oral argument.  See Fed.
R. Civ. P. 78; L.R. 7-15; July 30, 2009 Case Management Order ¶ 5.
///

1

1    Based on the record as a whole and the applicable law, the decision of the

2    Commissioner is REVERSED AND REMANDED for further proceedings

3    consistent with this Memorandum and Opinion and Order of Remand.

4    **II.    BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

5    **DECISION**

6    Plaintiff filed applications for Supplemental Security Income benefits and

7    Disability Insurance Benefits on or about September 29, 2003.  (Administrative

8    Record ("AR") 15, 187-89, 336-38).  Plaintiff asserted that he became disabled on

9    June 1, 2002, because he was partially sighted since birth.  (AR 197).  The

10   Administrative Law Judge ("ALJ") examined the medical record and held three

11   hearings.  (AR 24-114).  At the first hearing, on September 14, 2005, the ALJ

12   heard testimony from a medical expert, a vocational expert, and plaintiff, but

13   plaintiff's counsel was not present.  (AR 24-50).  Plaintiff's counsel was present

14   for the next two hearings, on December 21, 2005, and June 7, 2007, at which a

15   medical expert, a vocational expert, and plaintiff testified.  (AR 51-114).

16   On June 15, 2007, the ALJ determined that plaintiff was not disabled

17   through the date of the decision.  (AR 15-21).  Specifically, the ALJ found:

18   (1) plaintiff suffered from the severe impairment of congenital nystagmus (AR

19   17); (2) plaintiff did not have an impairment or combination of impairments that

20   meets or medically equals one of the listed impairments (AR 18); (3) plaintiff

21   retained the residual functional capacity to perform "an unlimited range of

22   exertional work" with certain non-exertional limitations (AR 18);[1]  (4) plaintiff

23   could perform his past relevant work (AR 20); and (5) plaintiff's allegations

24   regarding his limitations were not entirely credible.  (AR 19).

25   The Appeals Council denied plaintiff's application for review.  (AR 6-8).

26   ///

27

28   [1]The ALJ determined that plaintiff could perform work "allowing limited depth
perception involving small objects and limited color vision and no work around dangerous
unguarded moving machinery or work at unprotected heights."  (AR 18).

**III.    APPLICABLE LEGAL STANDARDS**

    **A.    Sequential Evaluation Process**

To qualify for disability benefits, a claimant must show that he is unable to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of at least twelve months. Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (citing 42 U.S.C. § 423(d)(1)(A)). The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

In assessing whether a claimant is disabled, an ALJ is to follow a five-step sequential evaluation process:

(1)    Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.

(2)    Is the claimant's alleged impairment sufficiently severe to limit his ability to work? If not, the claimant is not disabled. If so, proceed to step three.

(3)    Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.

(4)    Does the claimant possess the residual functional capacity to perform his past relevant work? If so, the claimant is not disabled. If not, proceed to step five.

(5)    Does the claimant's residual functional capacity, when considered with the claimant's age, education, and work experience, allow him to adjust to other work that exists in

significant numbers in the national economy?  If so, the

claimant is not disabled.  If not, the claimant is disabled.

Stout v. Commissioner, Social Security Administration, 454 F.3d 1050, 1052 (9th Cir. 2006) (citing 20 C.F.R. §§ 404.1520, 416.920).

### B.    Standard of Review

Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of benefits only if it is not supported by substantial evidence or if it is based on legal error.  Robbins v. Social Security Administration, 466 F.3d 880, 882 (9th Cir. 2006) (citing Flaten v. Secretary of Health & Human Services, 44 F.3d 1453, 1457 (9th Cir. 1995)).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but less than a preponderance.  Robbins, 466 F.3d at 882 (citing Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990)).

To determine whether substantial evidence supports a finding, a court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can reasonably support either affirming or reversing the ALJ's conclusion, a court may not substitute its judgment for that of the ALJ.  Robbins, 466 F.3d at 882 (citing Flaten, 44 F.3d at 1457).

## IV.   DISCUSSION

### A.    The ALJ Improperly Assessed Plaintiff's Credibility

Plaintiff contends that the ALJ improperly evaluated the credibility of plaintiff's subjective complaints.  (Plaintiff's Motion at 6).  The Court agrees.

### 1.    Pertinent Law

"To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis." Lingenfelter v.

4

1  Astrue, 504 F.3d 1028, 1035-36 (9th Cir. 2007).  First, "the ALJ must determine

2  whether the claimant has presented objective medical evidence of an underlying

3  impairment 'which could reasonably be expected to produce the pain or other

4  symptoms alleged.'"  Id. (quoting Bunnell v. Sullivan, 947 F.2d 341, 344 (9th Cir.

5  1991) (en banc)).

6        "Second, if the claimant meets this first test, and there is no evidence of

7  malingering, 'the ALJ can reject the claimant's testimony about the severity of

8  [his] symptoms only by offering specific, clear and convincing reasons for doing

9  so.'"  Lingenfelter, 504 F.3d at 1036 (citations omitted).  "In making a credibility

10 determination, the ALJ 'must specifically identify what testimony is credible and

11 what testimony undermines the claimant's complaints.'"  Greger v. Barnhart, 464

12 F.3d 968, 972 (9th Cir. 2006) (citation omitted).   "The ALJ must cite the reasons

13 why the claimant's testimony is unpersuasive."  Orn v. Astrue, 495 F.3d 625, 635

14 (9th Cir. 2007) (citation and quotation marks omitted).  In weighing credibility,

15 the ALJ may consider factors including:  the nature, location, onset, duration,

16 frequency, radiation, and intensity of any pain; precipitating and aggravating

17 factors (e.g., movement, activity, environmental conditions); type, dosage,

18 effectiveness, and adverse side effects of any pain medication; treatment, other

19 than medication, for relief of pain; functional restrictions; the claimant's daily

20 activities; and "ordinary techniques of credibility evaluation."  Bunnell, 947 F.2d

21 at 346 (citing Social Security Ruling ("SSR") 88-13[2]; quotation marks omitted).

22 The ALJ may consider (a) inconsistencies or discrepancies in a claimant's

23 statements; (b) inconsistencies between a claimant's statements and activities;

24 (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.

25

26 _____

27       [2]Social Security rulings are binding on the Administration.  See Terry v. Sullivan, 903
   F.2d 1273, 1275 n.1 (9th Cir. 1990).  Such rulings reflect the official interpretation of the Social
28 Security Administration and are entitled to some deference as long as they are consistent with the
   Social Security Act and regulations.  Massachi v. Astrue, 486 F.3d 1149, 1152 n.6 (9th Cir.
   2007) (citing SSR 00-4p).

1  Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002).  If properly supported,

2  the ALJ's credibility determination is entitled to "great deference."  See Green v.

3  Heckler, 803 F.2d 528, 532 (9th Cir. 1986).

4  **2.   Analysis**

5  In this case, the ALJ found that plaintiff's "medically determinable

6  impairment could reasonably be expected to produce the alleged symptoms, but

7  that [plaintiff's] statements concerning the intensity, persistence and limiting

8  effects of these symptoms are not entirely credible." (AR 19).  The ALJ provided

9  several reasons for discounting plaintiff's credibility.  The Court finds none of

10  them to be clear and convincing.

11  First, the ALJ stated that "[s]everal of the evaluating sources including Dr.

12  Bishai, Dr. Smith as well as the medical expert have . . . noted some

13  inconsistencies bearing on claimant's credibility." (AR 20).  Examination of the

14  underlying medical reports, however, reveals that they do not suffice to discount

15  plaintiff's credibility.  As the ALJ mentioned, Dr. Bishai "was of the opinion that

16  the alleged level of vision was not consistent with the degree of pathology" and

17  that the "degree or amount of [plaintiff's] nystagmus did not account for 20/200

18  best corrected vision." (AR 19 (citing Exhibit 2F [AR 263])).  However, it is not

19  clear that Dr. Bishai's statement concerns plaintiff's credibility.  Dr. Bishai

20  appears to have examined plaintiff on only one occasion, and his statement may

21  also indicate that further testing could have revealed additional or more extensive

22  pathology.  Indeed, the medical expert, Dr. McCaffery, had Dr. Bishai's report

23  before him at the December 21, 2005 hearing, when he explained that "[t]o date

24  there are no physical findings to support a visual acuity of 20/200 or 20/100" and

25  recommended visual evoked response testing to investigate the possibility of

26  additional pathology. (See AR 58, 60).  Therefore, Dr. Bishai's statement does not

27  constitute a clear and convincing reason to discount plaintiff's credibility.

28  ///

1    The ALJ also mentioned that examining psychiatrist Dr. Smith "noted that

2    some of the claimant's statements were inconsistent." (AR 20 (citing Exhibit 7F

3    [AR 302-07])).  The ALJ appears to be referring to Dr. Smith's statements that

4    (1) "it was somewhat surprising," in light of his vision problems, that plaintiff

5    stated he did not know why he was depressed; and (2) plaintiff stated "he was let

6    go from his job because he couldn't read his schedule when, in fact, he filled out

7    his questionnaire with no problem." (AR 302, 304-05).  But Dr. Smith also stated

8    that plaintiff "appeared mostly genuine," that "[t]here was no evidence of

9    exaggeration or manipulation," and that the inconsistencies "were minor points."

10   (AR 305, 307).  Therefore, in the context of the full report, the inconsistencies

11   noted by Dr. Smith do not suffice to reject claimant's credibility.

12   The ALJ also noted that the medical expert, Dr. McCaffery, "noted some

13   inconsistencies bearing on [plaintiff's] credibility." (AR 20).  However, the ALJ

14   did not cite any specific testimony of Dr. McCaffery to support this point.  The

15   Court's review of the hearing transcripts suggests that the ALJ may have had in

16   mind Dr. McCaffery's statement that "there have been examiners that say that

17   there's not enough pathology present to account for this reduced level of vision."

18   (AR 81).  But Dr. McCaffery made this statement in explaining why he suggested

19   that plaintiff undergo visual evoked response testing, and he did not identify any

20   statements that detracted from plaintiff's credibility.  (See id.).  Dr. McCaffery was

21   likely referring to Dr. Bishai's examination, discussed above.  The ALJ may have

22   also had in mind Dr. McCaffery's discussion of the lack of response in plaintiff's

23   left eye to the visual evoked response testing.  (See AR 75-78, 332).  Dr.

24   McCaffery believed the "negative wave form result is the result of the patient not

25   looking at the testing target" (AR 332), but the physician who performed the

26   examination, Dr. Nayyar, wrote that "[p]atient was looking at the target" and "was

27   unable to see anything through [the] left eye." (AR 334).  The visual evoked

28   response test was performed only once (AR 328), and Dr. McCaffery testified that

7

1   "it's now an international standard to test each eye twice" and "[e]specially when

2   you have an eye with an abnormal response, the second test . . . validates the first

3   test." (AR 75). Dr. McCaffery's own testimony therefore suggests that he had

4   insufficient data to draw a conclusion as to plaintiff's credibility. Therefore,

5   without more explanation, Dr. McCaffery's identification of "inconsistencies"

6   does not suffice to detract from plaintiff's credibility.

7        The second reason the ALJ gave for discounting plaintiff's credibility was

8   that plaintiff's "motivation to work is highly questionable and there appears to be

9   little interest in or attachment to work." (AR 20). This statement is not supported

10   by substantial evidence. Plaintiff stated, for example, that "many times" previous

11   employers have "terminated [him] after short period[s] of time . . . due to visual

12   problems," and that he "frequently visit[s] mall store[s] to put in applications for

13   employment." (AR 197, 209, 213). The ALJ noted that plaintiff told an

14   examining psychologist that he "spends a lot of time on job searching." (AR 19,

15   258). In addition, plaintiff received a bachelor of arts degree in 2003, suggesting

16   he may not have been able to engage in full-time employment until then, and he

17   testified that he had never "been hired for more than part-time" work. (AR 33-34,

18   37). The ALJ did not cite any evidence to support his statement that plaintiff's

19   interest in working is questionable, and the Court finds none.

20        Defendant argues that the ALJ also relied on plaintiff's daily activities in

21   discounting plaintiff's credibility. (Defendant's Motion at 5) (citing AR 19).

22   Although the ALJ listed plaintiff's daily activities as reported to an examining

23   psychologist (AR 19), the ALJ did not expressly rely on plaintiff's daily activities

24   in evaluating his credibility. (See AR 20). In any event, plaintiff's daily activities

25   do not undermine his credibility. As the ALJ summarized, the psychologist

26   reported that plaintiff "spends a lot of time on job searching, watching television,

27   playing video games, writing lyrics, going to the movies, attending sporting events

28   and doing chores around the house including laundry and washing clothes." (AR

8

19 (citing Exhibit 1F [AR 256-62])).  However, plaintiff provided other descriptions of his daily activities that illuminate the difficulties caused by his impairment.  For example, he stated that he requires assistance with shaving and "color coordination" of his clothing; he needs help with shopping to identify items that are labeled in small print; he can only do the laundry if it is pre-sorted; he cannot clean satisfactorily; he experiences difficulty crossing streets and was hit by a car; he cannot read bus schedules or street signs from a distance or at night; he must sit very close to television, computer or movie screens; and he does not attend sporting events because he cannot see very well from most seats.  (AR 209-13, 343).  These statements do not undermine plaintiff's subjective symptom testimony or indicate that plaintiff is able to work.  See Benecke v. Barnhart, 379 F.3d 587, 594 (9th Cir. 2004) ("[T]he mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.  One does not need to be 'utterly incapacitated' in order to be disabled." (quoting Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001))).  This reason, too, fails to detract from plaintiff's credibility.

Finally, the ALJ states that the objective medical evidence does not fully support plaintiff's subjective complaints.  (AR 20).  As detailed above, the ALJ did not provide any other valid reason for discounting plaintiff's credibility.  Lack of objective medical evidence to support subjective symptom allegations is not alone sufficient to discount a claimant's credibility.  See Burch, 400 F.3d at 681.  Therefore, remand is warranted for the ALJ to reassess plaintiff's credibility.[3]

---

[3]The Court need not, and has not adjudicated plaintiff's other challenges to the ALJ's decision, except insofar as to determine that a reversal and remand for immediate payments of benefits would not be appropriate.  The Court notes, however, that plaintiff has stated that his vision is worsening (AR 342, 347), and the record contains very little recent ophthalmological evidence.  Moreover, the visual evoked response testing performed at Dr. McCaffery's request did not meet the "international standard to test each eye twice" (AR 75) and generated a number of follow-up questions from Dr. McCaffery and disagreement with the examining physician.  (See AR 329-32, 334).  On remand, the ALJ is free to take whatever further action is deemed appropriate to ensure that the decision is supported by substantial evidence in the record.

1  **V.    CONCLUSION**

2          For the foregoing reasons, the decision of the Commissioner of Social

3  Security is reversed in part, and this matter is remanded for further administrative

4  action consistent with this Opinion.[4]

5          LET JUDGMENT BE ENTERED ACCORDINGLY.

6  DATED:  August 25, 2010

7                                                      /s/
                                          _____
8                                          Honorable Jacqueline Chooljian
                                          UNITED STATES MAGISTRATE JUDGE
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25  _____

26          [4]When a court reverses an administrative determination, "the proper course, except in rare
    circumstances, is to remand to the agency for additional investigation or explanation."
27  Immigration & Naturalization Service v. Ventura, 537 U.S. 12, 16 (2002) (citations and
    quotations omitted).  Remand is proper where, as here, additional administrative proceedings
28  could remedy the defects in the decision.  McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir.
    1989); see also Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003) (remand is an option
    where the ALJ stated invalid reasons for rejecting a claimant's excess pain testimony).